**MASON, Appellant,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee.**

[Cite as *Mason v. United States Fid. & Guar. Co.* (1990), 69 Ohio App.3d 309.]

Court of Appeals of Ohio,
Hamilton County.

No. C–890351.

Decided Sept. 5, 1990.

310

*Tobias & Kraus, David Torchia* and *Paul H. Tobias,* for appellant.

*Bloom & Greene Co., L.P.A.,* and *Lawrence A. Flemer; Shawe & Rosenthal* and *Patrick Pilachowski,* for appellee.

---

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket and journal entries, the original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, the briefs and the oral arguments of counsel.

Plaintiff-appellant James K. Mason appeals from the trial court's order granting summary judgment in favor of his employer, United States Fidelity and Guaranty Company ("USF & G"), on his claims for breach of an employment contract, promissory estoppel, and negligent and intentional infliction of emotional distress.[1] His three assignments of error contend that genuine issues of material fact exist as to each claim or theory of liability, making summary judgment inappropriate. We find that his assignments are not well taken.

When USF & G discharged him, Mason was a seventeen-year employee. He had been an insurance auditor in USF & G's Cincinnati branch office. The evidence is undisputed that, because of his agoraphobia and progressing mental illness related to marital stress, Mason worked sporadically between September 1979 and August 2, 1983, the date of his discharge. His absences from work totalled four days in September 1979; five weeks beginning in December 1979; three weeks beginning on April 25, 1980; five weeks beginning in December 1980; and six months beginning in December 1981.

---

1. On April 12, 1984, the Ohio Civil Rights Commission dismissed Mason's claims for age and handicap discrimination, filed after his discharge by USF & G, upon a finding of no probable cause.

During December 1981, USF & G placed Mason on sick leave. In June 1982, while Mason was hospitalized, his attending psychiatrist suggested that his return to work might be beneficial. Mason decided to try working part-time at the office and part-time at home until he was well enough to put in a full day. Upon his unannounced return to the office, Mason learned for the first time that, in response to a substantial decline in revenue because of increased competition, USF & G had elected to eliminate his position and to reduce its staff at the Cincinnati branch to only one auditor. On that same visit, Mason was introduced to the new office manager, Kenneth Moore, who told him, "You are going to present me with a problem." Mason maintains that, following this confrontation with Moore, he went home, locked himself in his room, and, several days later, entered a psychiatric hospital. After his release from the hospital, Mason continued to maintain contact with USF & G by telephone, but each time he called, Moore advised him that no work was available at the time.

Beginning in July 1982, Mason's application under USF & G's long-term disability plan was approved, and he received continuous benefits until his discharge. On July 22, 1983, at the request of USF & G, Mason was independently examined by a psychiatrist who reported to USF & G that Mason could return to work. Despite Mason's availability, USF & G terminated his employment effective August 2, 1983, and notified him of its decision to terminate him by letter dated August 30, 1983.

In his first assignment of error, challenging the trial court's entry of summary judgment in favor of USF & G, Mason argues that USF & G's employee manual, entitled "Employee's Guide to Personnel Practices" ("Employee's Guide"), included enforceable written promises: (1) to reinstate employees coming off long-term disability; and (2) to pay discharged employees severance pay. He acknowledges, as USF & G argues, that nothing specifies that his employment with USF & G was for a given term of years.

An employment relationship of indefinite duration is an employment-at-will which either party may terminate for any reason not contrary to law. In an oral employment-at-will relationship, the employer can at any time terminate the employee, with or without cause, even if the employer acts with reckless disregard of the employee's rights. *Phung v. Waste Management, Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114; *Henkel v. Educational Research Council* (1976), 45 Ohio St.2d 249, 74 O.O.2d 415, 344 N.E.2d 118. However, an oral employment-at-will relationship can be altered or modified by a written agreement or by the character of the employment, custom, course of dealing between the parties, company policy, or any other relevant facts. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19

OBR 261, 483 N.E.2d 150. In binding the employer to its promises, Ohio appellate courts have resorted to the following theories: (1) express contract; (2) unilateral contract; (3) an implied contract of continued employment; or (4) promissory estoppel. See *Helle v. Landmark, Inc.* (1984), 15 Ohio App.3d 1, 15 OBR 22, 472 N.E.2d 765; *Tohline v. Central Trust Co., N.A.* (1988), 48 Ohio App.3d 280, 549 N.E.2d 1223.

Nowhere does Mason allege that he relied on an oral promise of job security by his supervisors or by USF & G. He argues only that Section 5.2 of the USF & G Employee's Guide contains enforceable promises which require his reinstatement as follows:

"Employees who are receiving Long Term Disability payments * * * are to be on Leave of Absence status. If an employee's health improves to the extent that their [*sic*] physician recommends returning to full time employment, every effort will be made to reinstate the employee in a job they [*sic*] are capable of performing if a suitable vacancy is available."

To determine if this language constitutes an enforceable promise under a contract theory, we must examine whether USF & G should reasonably have expected its employees to believe that the statement was a specific promise and whether it induced Mason's action or forbearance. See *Kelly v. Georgia–Pacific Corp.* (1989), 46 Ohio St.3d 134, 139, 545 N.E.2d 1244, 1250; *Mers, supra,* 19 Ohio St.3d at 105, 19 OBR at 265, 483 N.E.2d at 154–155. We are convinced that an employee returning from long-term disability cannot from this language reasonably presume absolute job security because reinstatement is merely a possibility tied to two contingencies: (1) the employee's capability to perform; and (2) the availability of a "suitable vacancy." Section 5.2 of the Employee's Guide makes no specific guarantee or promise that, upon return from long-term disability leave, an employee's former job will be available.

Mason also argues that USF & G's promise that it would use "every effort" to reinstate him if a suitable vacancy was available created an express duty of good faith and fair dealing. Accordingly, he contends, a jury issue was presented concerning what efforts USF & G used to find suitable employment for him. He does not maintain that the Cincinnati branch office had a vacancy for him in August 1983. His only claim of suitable work before the trial court was the reference in his deposition to the position created by the retirement of a special agent named Rosser. However, USF & G's employment records, the accuracy of which is uncontradicted, establish that Rosser did not retire until November 1984.

The burden of proof is on the employee to show that he is not an at-will employee or that his discharge was contrary to law. See *Kuhn v. St. John & West Shore Hosp.* (1989), 50 Ohio App.3d 23, 552 N.E.2d 240. Mason has failed to provide evidence sufficient for a *prima facie* case when the depositions, affidavits and exhibits reveal the existence of no genuine issues of material fact on his claim for breach of express contract. We therefore conclude that the trial court correctly granted summary judgment on Mason's contract claims predicated upon the provisions of USF & G's Employee's Guide. See *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. We further conclude that the trial court correctly granted summary judgment upon Mason's theory of implied contract because he did not present evidence of oral promises of job security by USF & G personnel.

Mason's claim for severance pay is based upon statements that appear in USF & G's "Supervisor's Guide to Personnel" ("Supervisor's Guide"). Although the Employee's Guide makes a single reference to severance pay, it does not mention or outline a severance-pay plan or benefits. The Supervisor's Guide was prepared for supervisors only, and the evidence of company procedure, which is not contradicted, is that USF & G did not intend it to be distributed to Mason or to other nonsupervisory employees. As we held in *Tohline, supra,* "[a]bsent mutual assent, a handbook becomes merely a unilateral statement of rules and policy which creates no obligations and rights." *Id.,* 48 Ohio App.3d at 282, 549 N.E.2d at 1227. The record fails to demonstrate a common intention by USF & G and Mason that the Supervisor's Guide created a contract of employment. See *Brandenburger v. Hilti, Inc.* (1989), 52 Ohio App.3d 21, 24–25, 556 N.E.2d 212, 216–217.

Mason's first assignment of error is overruled.

To avoid the employment-at-will doctrine, Mason also relies upon promissory estoppel, which is applicable when: (1) the employer should reasonably expect its promise to induce the employee's action or forbearance; (2) the promise in fact induced the employee's action or forbearance; and (3) only by enforcement of the promise can injustice be avoided. *Mers, supra.*

Mason maintains that USF & G's Employee's Guide provided employees with a legitimate expectation of fair treatment and job security in return for their loyal and continued service. Although Mason did not refrain from seeking other employment because of the alleged promises, the employee's actual consideration of other employment opportunities is not conclusive. In view of 1 Restatement of the Law 2d, Contracts (1981) 204, Section 90, Comment *a,* the absence of evidence of other job offers may only narrow the factual inquiry concerning the employee's reasonable expectation and reliance.

Because the record is silent as to any written or oral promise of continued employment by USF & G upon which Mason could reasonably have been expected to rely, the Employee's Guide did not alter the employment-at-will relationship under his claim of promissory estoppel. *Karnes v. Doctors Hospital* (1990), 51 Ohio St.3d 139, 141, 555 N.E.2d 280, 282.

Likewise, Mason's assertion that USF & G's practice of awarding severance pay to its other employees established an implied custom or company policy upon which he relied is not supported by the numbers. Of the forty-one employees who left the Dayton and Cleveland offices, USF & G's records show that a total of only two received severance pay. Mason failed to offer evidence to the contrary. Mason's second assignment of error is overruled.

Mason's third assignment of error challenges the trial court's order granting summary judgment in favor of USF & G on his claims for negligent and intentional infliction of emotional distress, advanced in the second count of his complaint. He alleges that, although the conduct of USF & G did not cause his mental illness, it did exacerbate this preexisting condition.

The Ohio Supreme Court has abandoned the rule precluding damages for psychic injury without a contemporaneous physical injury, recognizing tort claims for negligent infliction of serious emotional distress in *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, and for intentional infliction of serious emotional distress in *Yeager v. Local 20, International Brotherhood of Teamsters* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666. The claims are different. Negligent infliction of emotional distress, pursuant to *Paugh, supra,* and its predecessor, *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, assumes that a bystander or witness to a sudden, negligently caused event is traumatized by its emotionally distressing occurrence. In contrast, the gravamen of a claim for intentional infliction of emotional distress is set forth in Restatement of Law 2d, Torts (1965) 71, Section 46(1), as adopted by the Ohio Supreme Court in *Yeager, supra,* which states:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Mason was not a traumatized bystander or a witness to a sudden, negligently caused occurrence and has no factual basis to assert a claim for damages from negligent infliction of serious emotional distress as defined in *Paugh, supra.* If his claim for damages is for intentional infliction of serious

emotional distress, proof of two ingredients is required: (1) outrageous conduct; and (2) severe emotional distress. According to Restatement of the Law 2d, Torts, *supra,* at 73, Section 46, Comment *d,* an employer is liable only when its conduct is so outrageous and extreme as to "go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." As a matter of law, the conduct must amount to more than mere "insults, indignities, threats, annoyances, petty aggressions, or other trivialities." See *Yeager, supra,* at 374–375, 6 OBR at 425–426, 453 N.E.2d at 671; see, also, *Tohline, supra.* Second, the emotional distress suffered by the employee must be "serious" and of such gravity as to be both severe and disabling. *Yeager, supra.* Contrary to USF & G's argument, in determining if the employer's conduct is outrageous, the employer's knowledge that an employee "was peculiarly susceptible to emotional distress by reason of some physical or mental condition * * * is a factor to be considered." Restatement of the Law 2d, Torts, *supra,* at 74–75, Section 46, Comments *e* and *f.*

 Mason stated that the basis for his claim was Moore's statement, "You are going to present me with a problem," and his admonition that Mason should stay on long-term disability because no work was available. The only other evidence he could point to was that Moore "never extended his hand" or "never talked to me except, yes, no. I'll keep you in mind * * * ." Mason's allegations, viewed in their best light, do not as a matter of law establish extreme and outrageous conduct necessary for a *prima facie* case of intentional infliction of emotional distress.

 On the state of this record the trial judge in granting summary judgment was not required to determine if genuine issues of material fact existed concerning outrageous conduct. The trial court correctly found that Mason was an at-will employee. Therefore, USF & G's conduct was privileged, because in discharging Mason, an at-will employee, USF & G had "done no more than to insist upon [its] legal rights in a permissible way, even though [it] is well aware that such insistence is certain to cause emotional distress * * * ." Restatement of the Law 2d, Torts, *supra,* at 76, Section 46, Comment *g.* Cf. *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 549 N.E.2d 1210. The record does not demonstrate a genuine issue of fact as to whether USF & G's conduct was in excess of the privilege. Cf. *Uebelacker, supra.* Consequently, USF & G is not liable to Mason for any emotional distress suffered, whether intended or reasonably foreseen. We, therefore, conclude that summary judgment was properly granted on Mason's claim for emotional distress. *Foster v. McDevitt* (1986), 31 Ohio App.3d 237, 31 OBR 520, 511 N.E.2d 403.

**318**

Mason's third assignment of error is overruled.

The trial court's judgment is affirmed.

*Judgment affirmed.*

DOAN, P.J., KLUSMEIER and GORMAN, JJ., concur.