THATCHER, Appellant,

v.

GOODWILL INDUSTRIES OF AKRON, Appellee.

[Cite as *Thatcher v. Goodwill Industries of Akron* (1997), 117 Ohio App.3d 525.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17817.

Decided Jan. 2, 1997.

528

Henning, Yost & Souers Co., L.P.A., and Richard L. Henning, for appellant.
Michele Morris, for appellee.

BAIRD, Judge.

Richard Thatcher appeals the Summit County Court of Common Pleas' grant of summary judgment to Thatcher's former employer, Goodwill Industries of Akron ("Goodwill"), on claims Thatcher made in connection with his discharge by Goodwill. We affirm in part and reverse in part.

In 1989, Goodwill hired Thatcher as a placement specialist, promoting him to personnel director in 1992. At the time of Thatcher's promotion, he informed Goodwill's president, Frederick Sonnett ("Sonnett"), that he (Thatcher) had a mental handicap. Sonnett agreed to accommodate Thatcher's handicap by permitting him to take time off from work without notice.

Over the course of 1993, Thatcher informed Sonnett that female employees of Goodwill had complained that a Goodwill sales director, Terry McCarty ("McCarty"), had abused and harassed them sexually. Thatcher presented Sonnett with exit interviews of former employees which detailed such complaints. At meetings between Sonnett and Thatcher on December 14 and 15, 1993 and January 24, 1994, Sonnett expressed himself angrily toward Thatcher regarding Thatcher's pursuit of these issues.

In late January 1994, Thatcher orally informed Goodwill's Board of Trustees of the complaints against McCarty. Thatcher contacted some complainants, some of whom wrote letters to trustee Foster Buchtel ("Buchtel").

On February 2, 1994, Thatcher took a leave of absence from work, pursuant to the accommodation to his handicap agreed to by Sonnett. A few days later, Sonnett sent Thatcher a note informing Thatcher that he was being relieved of certain security-related duties because, Sonnett wrote, he needed someone who was "readily available." Shortly thereafter, Sonnett learned that Thatcher had informed the board of the sexual harassment complaints. On February 24, 1994, while Thatcher was still on leave, Sonnett fired him. Goodwill maintains that Thatcher was fired because by encouraging ex-employees to submit complaints to the board concerning a Goodwill manager, Thatcher created unnecessary friction, contradicted his function as personnel director, and acted disloyally toward Goodwill.

I

Thatcher's six assignments of error challenge, claim by claim, the trial court's granting of summary judgment to Goodwill. In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. *Perkins v. Lavin* (1994), 98 Ohio App.3d 378, 381, 648 N.E.2d 839, 840–841. Pursuant to Civ.R. 56(C), summary judgment is not proper unless

(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to that party. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192–1193. Doubts must be resolved in favor of the nonmoving party. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686, 653 N.E.2d 1196, 1201–1202. Since only legal questions exist, no special deference is to be afforded the trial court upon a review of an entry of summary judgment. *Lorain Cty. Bd. of Commrs. v. United States Fire Ins. Co.* (1992), 81 Ohio App.3d 263, 267, 610 N.E.2d 1061, 1063–1064. We will, therefore, review the matter *de novo*. *Tyler v. Kelley* (1994), 98 Ohio App.3d 444, 446, 648 N.E.2d 881, 882.

A motion for summary judgment forces the nonmoving party to produce evidence on issues for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. The nonmovant must also present specific facts and may not rely merely upon the pleadings or upon unsupported allegations. *Shaw v. J. Pollock & Co.* (1992), 82 Ohio App.3d 656, 659, 612 N.E.2d 1295, 1297–1298. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56(E), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56(C) to show that there is a genuine issue for trial. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 73–74, 375 N.E.2d 46, 46–47. This court will reverse a summary judgment whenever it finds that reasonable minds could come to differing conclusions based on the evidence before the trial court. *Tersigni v. Gen. Tire, Inc.* (1993), 91 Ohio App.3d 757, 759, 633 N.E.2d 1140, 1140–1141.

## II

Thatcher's first assignment of error reads:

"The trial court erred by granting summary judgement on the claim of violation of the Whistleblower Statute (R.C. § 4113.52)."

The trial court sustained Goodwill's motion for summary judgment on Thatcher's whistleblower claim on the ground that Thatcher failed to allege that he filed a written report with a peace officer or public official as required by R.C. 4113.52(A)(1)(a). The face of the statute demonstrates the correctness of Thatcher's contention that the trial court misconstrued the statutory requirement. R.C. 4113.52(B) provides that no employer shall retaliate against an employee for

"making *any report* authorized by division (A)(1) or (2) of this section, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either such division. No employer shall take any disciplinary or retaliatory action against an employee for making *any report* authorized by division (A)(3) of this section if the employee made a reasonable and good faith effort to determine the accuracy of any information so reported * * *." (Emphasis added.)

R.C. 4113.52(A)(1) and (A)(3) both authorize "reports" to be made by employees to supervisors and other company officials.[1] Such reports fall into the class of "any report[s]" protected by R.C. 4113.52(B). That Thatcher made reports to company officials, and not to peace officers or other public officials, in no way deprives him of the protection of the Whistleblower's Act. We cannot affirm the trial court's grant of summary judgment for the defendant on this claim on the grounds articulated by the trial court.

Nevertheless, we overrule Thatcher's assignment of error and affirm the trial court's grant of summary judgment. A trial court's judgment must be affirmed if any valid grounds are found on review to support it. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174–175; *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, 1274–1275. Thus, "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Carter v.*

---

1. R.C. 4113.52(A)(1)(a) provides:

"If an employee becomes aware in the course of his employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that his employer has authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, *the employee* orally shall notify his supervisor or other responsible officer of his employer of the violation and *subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.* If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within his jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which he is engaged." (Emphasis added.)

R.C. 4113.52(A)(3) provides:

"If an employee becomes aware in the course of his employment of a violation by a fellow employee of any [law, ordinance, or work rule or company policy] and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and *subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.*" (Emphasis added.)

*Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150, 154. For reasons other than those articulated by the trial court, Thatcher fails to establish an issue of material fact under the Whistleblower's Act.

Goodwill correctly asserts that Thatcher "failed to file a written report required pursuant to the statute." The Ohio Supreme Court has declared that "[a]n employee who fails to follow the specific requirements of the statute is not a protected whistleblower and, accordingly, may not bring a wrongful discharge action pursuant to R.C. 4113.52." *Contreras v. Ferro Corp.* (1995), 73 Ohio St.3d 244, 249, 652 N.E.2d 940, 944. R.C. 4113.52(B) protects employees who make reports authorized by R.C. 4113.52(A)(1) and (A)(3). To qualify for whistleblower protection, an employee must file a report that concerns a violation of a state or federal statute, local ordinance, or employer work rule or company policy whose violation "the employee reasonably believes * * * either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony." R.C. 4113.52(A)(1). and (A)(3). Such a report must "provide sufficient detail to identify and describe the violation." *Id.*

In Count Five of his complaint, Thatcher alleges that Goodwill "engaged in a pattern and practice of discrimination against him for notifying authorities and others of [Goodwill's] discriminatory practices culminating in the retaliatory, wrongful, and unlawful discharge of [Thatcher] in violation of O.R.C. 4113.52." [2] Thatcher does not allege explicitly that these "discriminatory practices," or any particular example thereof, were likely to cause an imminent risk of physical harm to anyone, cause a hazard to public health or safety, or were felonious. Nowhere in either his appellate brief or his brief in opposition to Goodwill's motion for summary judgment does Thatcher identify which "discriminatory practices" described in his filed report belong to this class of violations.

The only thing in the record possibly constituting a written "report" filed by Thatcher is the group of exit interview documents that Thatcher allegedly provided to Sonnett in 1993, and which Thatcher appended to his brief in opposition to Goodwill's motion for summary judgment. Even assuming that Thatcher's presentation of such documents otherwise qualifies as "filing a report" pursuant to the Whistleblower's Act, Thatcher's presentation of them to Sonnett does not qualify for whistleblower protection because the documents failed to

---

2. In Count Five of his complaint, Thatcher incorporates paragraphs from Count Three of his complaint, which allege that Goodwill condoned the conduct of a Goodwill employee who "verbally abused and harassed female employees" and that "[s]uch abuse included, but is not limited to, sexually explicit remarks, touching, and requests."

"provide sufficient detail to identify and describe" any violation of the sorts with which the Act is concerned.

The exit interviews alleged that McCarty's demeanor was inconsistent, that he had had a "personal relationship" with a co-worker, that he called a third worker a "bitch," that he made other workers "irate," and that he screamed at employees and used coarse language. The events recounted in the exit interviews are unsavory but do not appear clearly felonious, likely to cause an imminent threat of physical harm to anyone, or likely to cause a hazard to public health or safety. The Whistleblower Act does not protect the reporting of every form of discrimination, abuse, and harassment. Goodwill demonstrated how Thatcher failed to establish his compliance with the requirements for gaining protection of the Whistleblower's Act. Thatcher's first assignment of error is overruled.

### III

Thatcher's second assignment of error states:

"The trial court erred by granting summary judgement on the claim of retaliation in violation of R.C. § 4112.02(I)."

Thatcher contends that in Count 3 of his complaint he made out a claim of retaliatory discharge under R.C. 4112.02(I), but that the trial court misconstrued that claim to be "essentially the same" as his complaint in Count Five that Goodwill violated the Whistleblower Statute. We agree and further find that this claim survives Goodwill's motion for summary judgment. Therefore, we sustain Thatcher's second assignment of error.

Count 3 of Thatcher's complaint adequately sets forth its statutory basis and makes out a claim of retaliatory discharge. All that is required for notice pleading is a short and plain statement of the claim showing that the party is entitled to relief, and a demand for judgment for the relief to which the party claims to be entitled. Civ.R. 8(A). Thatcher incorporated into Count 3 of his complaint prior paragraphs 1 through 16. Paragraph 2 of Thatcher's complaint identified his action as arising under R.C. 4112 *et seq.*, R.C. 4113.51 *et seq.*, and Ohio common law. Paragraph 3 of his complaint recited R.C. 4112.99 as a source for this civil cause of action for all appropriate relief. See *Elek v. Huntington Natl. Bank* (1991), 60 Ohio St.3d 135, 136, 573 N.E.2d 1056, 1057–1058 (finding that R.C. 4112.99 created a private cause of action for violations of R.C. Chapter 4112).

To support a claim of retaliatory discharge, Thatcher must establish (1) that he engaged in a protected activity, (2) that he was the subject of an adverse employment action, and (3) that a causal link existed between the protected

activity and the adverse action. *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.* (1994), 99 Ohio App.3d 396, 402, 650 N.E.2d 950, 954; see, also, *Cole v. Seafare Ent. Ltd., Inc.* (Feb. 14, 1996), Hamilton App. No. C–950157, unreported, 1996 WL 60970. Thatcher alleged these elements in paragraphs 19–23 of his complaint.

 Thatcher's extensive factual allegations of his efforts to report to his superiors discriminatory behavior by Goodwill employees (their alleged harassment and abuse of female employees [3]) establish that he engaged in a protected activity. R.C. 4112.02(I) sets forth one definition among others of what constitutes "an unlawful discriminatory practice" under R.C. 4112.02:

"It shall be an unlawful discriminatory practice:

" * * *

"(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice * * *."

 Under R.C. 4112.02(I), opposing an employer's condoning of illegal discrimination is itself a protected activity for purposes of a claim of retaliatory discharge. *Cole v. Seafare Ent. Ltd., Inc.* (Feb. 14, 1996), Hamilton App. No. C–950157, *supra.*

 Thatcher establishes the other two elements of retaliatory discharge by evidence that he experienced an adverse employment action, his termination, causally related to his protected activity. The causal relationship between protected activity and termination is established by his factual allegations that (1) by virtue of his complaints, his employer knew that he was engaging in a protected activity; (2) his complaints to President Sonnett over the course of 1993 resulted not in any remedial action by Goodwill; on the contrary, Sonnett reacted angrily at one point, threatening physical violence upon Thatcher when the latter brought up the subject at a meeting; (3) Thatcher was terminated just three weeks after Sonnett learned that Thatcher had taken his complaints to the board of trustees, and during these weeks Sonnett and the board discussed the Thatcher affair; and (4) Goodwill reacted more mildly to more egregious actions by other employees than it did to Thatcher's conduct, *e.g.*, by taking no action against McCarty in response to complaints about his allegedly abusive behavior by those allegedly victimized.

---

3. Sexual harassment is a form of illegal discrimination under R.C. 4112.02(A). *Delaney v. Skyline Lodge, Inc.* (1994), 95 Ohio App.3d 264, 269, 642 N.E.2d 395, 398–399, certiorari denied, 513 U.S. 1191, 115 S.Ct. 1253, 131 L.Ed.2d 134.

■ The facts, then, considered in the light most favorable to the party opposed to the motion for summary judgment, show that Thatcher clearly established a prima facie case of retaliatory discharge. Where a claimant establishes a prima facie case of retaliatory discharge, the burden shifts to the defendant to articulate a legitimate reason for its action; if the defendant carries that burden, the burden is shifted back to the claimant to show that the articulated reason is merely a pretext. *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.* (1994), 99 Ohio App.3d 396, 402, 650 N.E.2d 950, 954.

■ Goodwill maintains that Thatcher was disloyal. Goodwill does not indicate how its allegation that Thatcher was disloyal constitutes a legally sufficient reason to terminate Thatcher in the face of the clear command of R.C. 4112.02(I). Since Goodwill fails to articulate a legitimate reason for its action, Thatcher's second assignment of error is sustained.

## IV

Thatcher's third assignment of error states:

"The trial court erred by granting summary judgment on the claim of wrongful discharge in violation of public policy."

■ Thatcher argues that the Whistleblower Act and R.C. 4112.02 *et seq.* recognize public policies that may be vindicated by tort claims for retaliatory discharge independent of statutory requirements. We need not address this argument, as Thatcher raises it for the first time on appeal.[4] It is well established that an appellant may not assert a new theory for the first time before the appellate court. *Kalish v. Trans World Airlines* (1977), 50 Ohio St.2d 73, 77, 4 O.O.3d 195, 197, 362 N.E.2d 994, 997. Thatcher's third assignment of error is overruled.

---

**4.** Prior to this appeal, Thatcher's sole reference to any sort of "public policy" claim is in paragraph one of his complaint:

"1. This action seeks back pay, compensatory damages, punitive damages, and attorney fees, and costs for wrongful discharge; tort, including the torts of fraud, outrageous conduct, *violations of public policy*, and negligent and/or intentional infliction of emotional distress, and negligent entrustment and/or negligent or reckless retention, interference with contract; handicap discrimination; unlawful retaliation; violation of the Whistle Blower Statute, and express and/or implied breach of contract." (Emphasis added.)

"Violations of public policies" is one of several items on this list not further developed in the succeeding thirty-one paragraphs of the complaint. Thatcher's brief in opposition to Goodwill's motion for summary judgment does not mention any "public policy" claim.

## V

Thatcher's fourth assignment of error states:

"The trial court erred by granting summary judgment on the claim of handicap discrimination."

In the first two counts of his complaint, Thatcher alleged that Goodwill's termination of him constituted both unlawful failure to accommodate Thatcher's handicap and unlawful discrimination against Thatcher on the basis of his handicap.

Handicap discrimination in employment is prohibited by R.C. 4112.02, which reads in pertinent part:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of race, color, religion, sex, national origin, *handicap*, age, or ancestry of any person, *to discharge* without just cause * * * that person[.]" (Emphasis added.)

In *Wooten v. Columbus, Div. of Water* (1993), 91 Ohio App.3d 326, 332, 632 N.E.2d 605, 608 (citing *Hazlett v. Martin Chevrolet, Inc.* [1986], 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478), the court set forth how a plaintiff claiming handicap discrimination in employment should defend against a motion for summary judgment:

"[P]laintiff should demonstrate that there is a genuine issue of material fact as to whether (1) he is handicapped, (2) action was taken by his employer (at least in part) because he was handicapped, and (3) even though plaintiff is handicapped, he can safely and substantially perform the essential functions of the job in question with reasonable accommodations."

No party disputes that Thatcher was handicapped or that Goodwill agreed to accommodate that handicap by granting Thatcher occasional leave time without prior notice. In February 1994, Thatcher requested and received leave time due to his handicap. During the period allotted, Thatcher was discharged. Goodwill has never argued that Thatcher's handicap prevented him from substantially performing the essential functions of his job. The issue is whether Thatcher established a material fact dispute over whether Goodwill discharged Thatcher at least in part because of his handicap. We find that he did not.

Thatcher cites evidence that in the months prior to February 1994, Sonnett had spoken and acted in a hostile manner toward Thatcher during meetings with him concerning alleged sexual harassment by McCarty. Thatcher also cites a note Sonnett wrote to Thatcher while the latter was on leave, in which Sonnett advised Thatcher that he was relieving him of authority over certain security matters because he needed someone who was "readily available." Thatcher also asserts

that, standing alone, the fact that he was discharged while on leave shows that his discharge was motivated by handicap discrimination.

Evidence that may indicate that Goodwill impermissibly relieved Thatcher of certain duties does not raise the inference that Goodwill later fired him on account of his handicap. The trial court correctly noted that the timing of Thatcher's discharge does not show discrimination, in the absence of evidence of disparate treatment, *e.g.*, evidence that Goodwill could not terminate an at-will employee during a period of leave. Under Thatcher's theory, had Goodwill waited until he returned to work and then discharged him, there would have been no impermissible discrimination.

Because Thatcher fails to establish a material fact issue as to whether his discharge was discriminatory, he likewise fails to show that that discharge constitutes a failure to accommodate his handicap. Thatcher's fourth assignment of error is overruled.

## VI

Thatcher's fifth assignment of error states:

"The trial court erred by granting summary judgment on the claim of breach of contract."

Thatcher claims that his discharge breached an implied contract between himself and Goodwill, whose terms prohibited discharge on the basis of handicap or for reporting sexual harassment. Thatcher also claims that Goodwill was estopped from discharging him for either reason because Thatcher reasonably and detrimentally relied upon Goodwill's promises not to discharge employees for these reasons.

As we explained above, Thatcher's claims fail insofar as they allege that he was fired because of his handicap. Therefore we evaluate his implied contract and promissory estoppel claims only insofar as they allege that he was fired for reporting sexual harassment.

"In general, under the employment-at-will doctrine, the employment relationship between employer and employee is terminable at the will of either; thus an employee is subject to discharge by an employer at any time, even without cause." *Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 574, 653 N.E.2d 381, 384. However, the Ohio Supreme Court has recognized implied contract and promissory estoppel as exceptions to the general rule of employment at will. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103, 19 OBR 261, 263–264, 483 N.E.2d 150, 153–154.

In *Tersigni v. Gen. Tire, Inc.* (1993), 91 Ohio App.3d 757, 762, 633 N.E.2d 1140, 1142–1143, this court found that employees presented enough relevant evidence to defeat summary judgment for their employer on the employees' claim that the employer's layoff policy, pursuant to which senior workers were laid off last, was enforceable as a term of an implied unilateral contract. We initially noted that to prove an enforceable contract with an employer, an employee must establish offer, acceptance, and consideration. *Id.* at 760, 633 N.E.2d at 1141–1142. We found the following employee allegations of the policy's "existence and application," where supported by Civ.R. 56 evidence, sufficient to present a question of fact as to whether the policy constituted an offer to alter the employment-at-will relationship between the parties:

"[The policy was]

"1. identified in writing and in detail;

"2. clear in its procedures, available to employees, and relied on by employees;

"3. widely and uniformly followed for a period in excess of one decade with management expecting employees to become aware of, and rely on procedures;

"4. enforceable and followed without any exercise of discretion by supervisors;

"5. discussed and/or intended by management to be communicated between supervisors and the employees; and

"6. observed by the plaintiffs as applied to similarly situated employees." *Id.* at 761, 633 N.E.2d at 1142.

Thatcher cites the following evidence to establish his claim that there existed between him and Goodwill an implied employment contract including a term prohibiting retaliation for reporting sexual harassment: (i) Sonnett and other company officials stated in deposition testimony that Goodwill's commitment to a harassment-free workplace could be relied upon by employees; and (ii) McCarty testified that he told sales managers beneath him that they could complain about sexual harassment to the personnel department. On the other hand, Thatcher concedes that Goodwill did not have a written policy against retaliation for reporting sexual harassment. Thatcher can point to no prior applications of any policy against retaliation for reporting sexual harassment, and plainly does not assert that such a policy was followed without discretion by supervisors. No evidence was presented showing clear procedures for reporting harassment. In his deposition testimony, Sonnett denied the existence of a company policy prohibiting retaliation against those who report sexual harassment.

Upon comparing the facts Thatcher presents to those presented in *Tersigni*, we are convinced that the evidence Thatcher presents is not sufficient to create a material fact issue on the existence of an offer on the part of Goodwill of any contractual term prohibiting firing for reporting sexual harassment.

We turn to Thatcher's promissory estoppel claim. In essence, Thatcher claims that even if no implied employment contract exists, Goodwill was precluded from exercising its right to discharge Thatcher at will, because in reliance on Goodwill's promise that it would not retaliate against employees who report sexual harassment by Goodwill employees, Thatcher reported on another employee's sexual harassment of women employees. The Supreme Court in *Mers* declared:

"The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers*, 19 Ohio St.3d at 101, 19 OBR at 262, 483 N.E.2d at 152, at paragraph three of the syllabus.

Promissory estoppel claims consist of three elements: promise, foreseeability, and detrimental reliance. Because Thatcher has failed to establish a cognizable promise for promissory estoppel purposes, we affirm summary judgment for Goodwill on this claim.

This court has held that for one claiming promissory estoppel, "the promises alleged must be 'clear and unambiguous' in their terms." *Rudy v. Loral Defense Sys.* (1993), 85 Ohio App.3d 148, 154, 619 N.E.2d 449, 453. Where the claimant alleges a promise of continued employment, the clear and unambiguous promise must be for job security. *Id.* For example, because an employee had never been given a promise of continued employment, the Ohio Supreme Court affirmed disallowance of recovery on promissory estoppel grounds to the employee, whose employer advised him that certain pricing practices were legitimate, and then discharged him for having engaged in those actually illegitimate practices. *Russ v. T.R.W., Inc.* (1991), 59 Ohio St.3d 42, 50, 570 N.E.2d 1076, 1084–1085; see, also, *Karnes v. Doctors Hosp.* (1990), 51 Ohio St.3d 139, 142, 555 N.E.2d 280, 283.

In *Mers* and *Tersigni*, courts found the promises established to be sufficiently clear and unambiguous to reverse summary judgment on promissory estoppel claims. In *Mers*, the employee was promised explicitly that if his criminal prosecution was favorably resolved, his suspension from his job would be lifted and he could continue his employment. In *Tersigni*, this court found sufficient evidence to reverse summary judgment that an employer had promised a layoff

policy pursuant to which the senior employees bringing the action would not have been laid off, *i.e.*, we found that the senior employees had established a clear and unambiguous promise of priority with respect to continued employment.

In his affidavit, Thatcher makes the following assertions:

"At all times I was employed by Goodwill, its management communicated to employees that Goodwill was the kind of employer that did not tolerate unlawful sexual harassment * * * or other forms of abusive treatment.

"As part of my job, I was required to put on sexual harassment training and communicate to employees that Goodwill would take effective action to prevent unlawful discrimination and sexual harassment."

Thatcher's assertions do not constitute evidence of a clear and unambiguous promise by Goodwill that it would continue to employ Thatcher should he report sexual harassment to his superiors. See *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 670, 591 N.E.2d 752, 756–757 (vague remarks by individuals not employee's immediate supervisors do not create a genuine dispute over whether clear and unambiguous promises were made upon which one could reasonably rely). Summary judgment was therefore appropriate on Thatcher's promissory estoppel claim. Thatcher's fifth assignment of error is overruled.

## VII

Thatcher's sixth assignment of error states:

"The trial court erred by granting summary judgment on the claim of intentional and negligent infliction of emotional distress."

Thatcher alleges that Sonnett negligently and intentionally inflicted emotional distress upon him over the course of six incidents:

1. Sonnett testified that he lost his temper at a meeting between Sonnett and Thatcher on December 14, 1993, wherein Sonnett "raised his voice" and "used a swear word."

2. Thatcher testified that at a December 15, 1993 meeting between him and Sonnett, Sonnett got angry that Thatcher mentioned McCarty's name again after having been told not to do so, and then jumped out of his chair as if to hit Thatcher, but caught himself, saying that Thatcher had better get out before Sonnett did something that he'd be sorry for.

3. Sonnett testified that he "was really angry and agitated" with Thatcher in a meeting with him on January 24, 1994, because, Sonnett said, Thatcher had failed to perform an administrative task. Sonnett said something to the effect of, "What the hell do I have to do to get a call list? It would only take me—if I went down there myself and went through the files, it would take me an hour and a

half. Why the hell can't you get staff members to produce this or do it yourself?" Sonnett reported that later that morning he spoke with Thatcher's doctor, who told Sonnett that Thatcher had told him that Thatcher had blacked out and hit his head after talking with Sonnett.

4. While Thatcher was on leave in February 1994, Sonnett removed certain security duties from Thatcher's position.

5. On the day before Thatcher was fired, Sonnett called Thatcher and, among other things, in a calm tone of voice told Thatcher that "I will never agree to any kind of settlement to save the pain in the ass or fifty fucking cents."

6. Sonnett's firing of Thatcher on February 24, 1994.

 The tort of negligent infliction of emotional distress assumes that a bystander or witness to a sudden, negligently caused event is traumatized by its emotionally distressing occurrence. *Mason v. United States Fid. & Guar. Co.* (1990), 69 Ohio App.3d 309, 316, 590 N.E.2d 799, 803–804 (citing *Yeager v. Local Union 20, Teamsters* [1983], 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666); *Westenbarger v. St. Thomas Med. Ctr.* (June 29, 1994), Summit App. No. 16119, unreported, 1994 WL 286022, at 11–12. Since Thatcher does not allege, and provides no factual basis to support a conclusion that he was a traumatized bystander or witness to a sudden, negligently caused occurrence, summary judgment was appropriately granted against his claim of negligent infliction of emotional distress.

 Thatcher also claims that Goodwill intentionally inflicted emotional distress upon him. A claim for intentional infliction of emotional distress requires a plaintiff to show that (1) the defendant intended to cause emotional distress, or knew or should have known that the actions taken would result in serious emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious. *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 82, 603 N.E.2d 1126, 1132.

 The Ohio Supreme Court has stated that " '[i]t would be absurd for the law to seek to secure universal peace of mind, and many interferences with it must of necessity be left to other agencies of social control.' " Quoting Prosser, Law of Torts (4 Ed. 1971) 51, Section 12. *Yeager, supra,* 6 Ohio St.3d at 374, 6 OBR at 425, 453 N.E.2d at 671. "Conduct rises to the level of extreme and outrageous only if it goes beyond all bounds of decency and can be regarded as atrocious and intolerable in a civilized society. Generally, it must be conduct that would lead an average member of the community to exclaim, 'Outrageous!' " *Perkins v. Lavin* (1994), 98 Ohio App.3d 378, 383, 648 N.E.2d 839, 842. "As a matter of law, the conduct must be more than mere 'insults, indignities, threats,

annoyances, petty aggressions, or other trivialities.'" *Mason*, 69 Ohio App.3d at 317, 590 N.E.2d at 804, quoting 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, comment *d*.

Thatcher argues that in view of Goodwill's knowledge that he suffered from a mental disorder, Sonnett's conduct was outrageous. In evaluating an employee's claim that his employer intentionally inflicted emotional distress upon him, his employer's knowledge that he is peculiarly susceptible to emotional distress by reason of his mental condition is a factor to be considered. *Id.* Nevertheless, Thatcher has not established that Sonnett's conduct was extreme and outrageous.

In *Westenbarger*, Summit App. No. 16119, at 9–10, this court analyzed an employee's claim of extreme and outrageous conduct on the part of her employer by comparing the facts supporting that claim with those found sufficient by the Ohio Supreme Court to affirm a jury verdict for the employee in *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 570 N.E.2d 1076. There, as here, this court found the facts not to approach the extremity and outrageousness of the facts in *Russ*, and so found summary judgment appropriate against the employee's claim that the employer intentionally inflicted emotional distress.

In *Russ*, the employee was discharged for following his employer's pricing practices, which, unbeknownst to the employee, were illegal. The employer supplied the employee's name to prosecutors, who persuaded him to cooperate with their investigation of the employer. The employee went undercover and was wired for that purpose. In *Westenbarger*, we noted the Ohio Supreme Court's emphasis on the totality of the employer's behavior:

" 'The proximate cause of the emotional distress suffered by [plaintiff] is not limited to the mere fact of his discharge. Rather, the circumstances surrounding his discharge, including [defendant's] false characterization of [plaintiff] as an instigator of and willing participant in the pricing practices, were in large part the basis for the trauma which he experienced.` This assault on his reputation, the efforts by [defendant] to make him the target of a federal investigation, and the prospect of engaging in the undercover investigation of his former colleagues together accounted for his emotional distress. The harm suffered by [plaintiff] was not limited to that produced by his discharge.'" *Westenbarger, supra*, at 10, quoting *Russ, supra*, 59 Ohio St.3d at 47, 570 N.E.2d 1076.

Thatcher's case lacks the circumstances that permitted recovery in *Russ*. There is evidence that Sonnett spoke coarsely to Thatcher, and even moved threateningly toward him during a meeting. There is evidence that after experiencing Sonnett's vitriol, Thatcher sought a doctor's help, complaining of blacking out and hitting his head. These facts do not approach the extremity of

those in *Russ,* where the employer was aware that it had encouraged the employee to break the law unwittingly, and then had informed authorities of the employee's lawbreaking, yielding threats of criminal prosecution against the employee and the employee's enlistment in collecting information undercover against his former colleagues. Thatcher's sixth assignment of error is overruled.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded*
*with instructions.*

QUILLIN, P.J., and DICKINSON, J., concur.