DECISION AND JOURNAL ENTRY
Appellant Dean Morrison has appealed from a judgment of the Wayne County Common Pleas Court that granted summary judgment in favor of Appellee The Crown Divisions of Transpro, Inc. This Court affirms.
 I.
Morrison began his employment with The Crown Divisions of Transpro, Inc. (Crown) during March 1976. He worked as a material controller and was assigned to the "Paint, Pack and Ship" department. During 1994, he began feeling ill. By early 1995, it became apparent that Morrison suffered from several panic and anxiety disorders and required hospitalization. On January 31, 1995, he took a disability leave of absence from Crown and did not return until August, 1995.
On Tuesday, August 22, 1995, Morrison returned to work with two notes from his treating psychiatrist. The first note, dated August 14, 1995, stated:
 Dean is released for return to work on his usual schedule without limitations. He may return on Monday, August 21, 1995. The patient may need to attend a post hospital follow-up group on Wednesdays from 10:00 A.M. to 12:00 noon. Please release him to attend this group for follow up (sic) care, if necessary.
 This second note extended his return date and excused him for treatment on Monday, August 21, 1995. In any event, upon his return to Crown, Morrison requested an accommodation in order to attend the Wednesday therapy groups.[1] However, inconsistent with the first medical slip he submitted, Morrison requested a full work day off every Wednesday, claiming that the stress of cleaning up his work station, driving to and from Crown in order to attend the sessions and lunch would cause more harm than the therapy would remedy. Crown granted his request, but only in part. Craig Glasky, Morrison's immediate supervisor, informed Morrison that he would be excused every Wednesday from 9:00 a.m. to 1:00 p.m.
In spite of Glasky's admonition, on Wednesday, August 30, 1995, Morrison called in sick for the entire day, citing his need to attend his Wednesday group therapy. When he came to work the following day, he brought a third medical note dated August 30, 1995. That note read:
 Dean Morrison will be unable to attend work on Wednesdays so that he can attend the aftercare program in Canton. Dean attended the aftercare program on this date.
 After receiving the third note, Crown excused Morrison for the entire day on Wednesdays for an on-going basis.
On September 7, 1995, as a result of both his absences on August 21 and 30, 1995 and a tardy on August 29, 1995, Morrison was called into Glasky's office and given a written warning for a violation of Crown's attendance policy under the collective bargaining agreement. Morrison immediately objected and requested an audience with the Human Resources Manager, Loretta McVay. It appears, however, that McVay had no authority to resolve the objection and that the proper procedure for handling such conflicts was the filing of a grievance as set forth in the collective bargaining agreement. Nevertheless, Morrison, Glasky and two Union representatives proceeded to McVay's office. At the meeting, Morrison and the Union representatives attempted to convince McVay that the third medical note should be given retroactive effect, thereby excusing Morrison's August 30, 1995 absence. McVay maintained Crown's position that the written warning was valid and suggested that he file a grievance as he had done in the past. Morrison continued to protest. Eventually, McVay stood up, stated that she had heard enough and that the written warning was valid. Morrison then jumped up from his chair and, waiving his finger directly at McVay, exclaimed, "You're number one!" He then turned to Glasky, pointed at him and said, "You're number two!" In response, Glasky asked him if these were threats. One of the Union representatives quickly took Morrison's arm and told him to leave. As he was being led from the room, Morrison made a reference to another employee who had threatened to kill the whole union committee.
McVay and Glasky summoned the plant manager, Kim Brown. After discussing the matter with them and the Union representatives, Brown reviewed the third medical note and then destroyed the written warning. He did not discuss the September 7, 1995 confrontation in McVay's office with Morrison.
On September 8, 1995, McVay approached Paul Radzinski, Vice President of Crown, and informed him that she believed that, had it not been for Glasky's and the Union representative's presence, Morrison would have physically harmed her and that she now feared for her safety as a result of Morrison's threats. Radzinski reviewed the matter and directed Brown to suspend Morrison for three days pending an investigation. Thereafter, Brown, accompanied by an Union representative, informed Morrison that he was to be suspended and escorted from the premises. Morrison protested and requested that he be allowed to leave without an escort. Brown insisted, and Morrison was removed from the premises without further incident.
Morrison did not return to Crown after his three day suspension, and instead, he submitted a fourth medical note which stated that he would not be able to return until further assessment. He eventually returned to Crown on September 5, 1997, almost two years later.
On that same date, Morrison filed a complaint in the Wayne County Common Pleas Court naming Crown as defendant. In his complaint, Morrison alleged claims for (1) handicap discrimination, (2) hostile work environment, (3) failure to accommodate, and (4) intentional infliction of emotional distress. On June 18, 1998, Morrison moved the trial court to amend his complaint and add a fifth claim, to wit: retaliation. The motion was granted, and he filed his amended complaint accordingly.
On October 13, 1998, Crown filed a motion for summary judgment. On February 3, 1999, the trial granted the motion. Morrison timely appealed, asserting three assignments of error. Essentially, in each of his assignments of error, he has argued that the trial court's grant of summary judgment in favor of Crown was improper. For ease of discussion, this Court will first address the appropriate standard of review and then discuss each relevant claim in turn.
 II. A. Summary Judgment
This Court observes that upon a motion for summary judgment pursuant to Civ.R. 56(C), where a party seeks summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The Dresher court continued,
 The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
 (Emphasis sic) Id. The court then went on to limit the third paragraph of the syllabus of Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, to conform to the above requirements. Dresher, 75 Ohio St.3d at 295.
These principles were reaffirmed in Vahila v. Hall (1997),77 Ohio St.3d 421, 430:
 As explained in Mitseff (and more recently in Dresher), bare allegations by the moving party are simply not enough. The party seeking summary judgment always bears the initial responsibility of [1] informing the court of the basis for the motion and [2] identifying those portions of the record which support his or her claim. Then, and only then, is the initial burden discharged, requiring the nonmoving party to comply with Civ.R. 56(E).
 (Emphasis sic.) Thus, it is apparent that unless the movant fulfills both prongs of the Dresher duty, the motion for summary judgment must be denied. The moving party is required to state the basis for his or her motion and then point to "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any," that support the motion. Civ.R. 56(C). Merely alleging that a nonmoving party lacks evidence does not satisfy this obligation. Unless and until that burden is met, the nonmovant is under no corresponding duty, and the motion must be denied. "[A] movant's conclusory assertions of no evidence against the nonmovant [are] no longer good enough in Ohio." Am. Express Travel Related Serv. Co., Inc. v. Mandilakis (1996), 111 Ohio App.3d 160, 164. Further, assuming the movant satisfies his or her burden, the nonmovant is then permitted to present or point out evidence that satisfies the reciprocal burden to demonstrate the existence of a material factual dispute.
In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Because the propriety of a trial court's decision granting summary judgment is a matter of law, an appellate court reviews the matter de novo.Thatcher v. Goodwill Industries of Akron (1997), 117 Ohio App.3d 525,531.
 B. Retaliation, Hostile Work Environment and the Request
This Court would initially note that on appeal, Morrison has abandoned his claims for hostile work environment, retaliation and failure to give a reasonable accommodation as to his request to leave the premises without an escort. As such, he has conceded the correctness of the trial court's order in that regard, and this Court will not address those claims.
 C. Handicap Discrimination
In order to establish a prima facie case of handicap discrimination, the claimant must demonstrate each of the following: (1) that he or she was handicapped; (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped; and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question with reasonable accommodations. Hood v. Diamond Products (1996), 74 Ohio St.3d 298, paragraph one of the syllabus. Once the claimant establishes a prima facie case of discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. Id. at 302. Legitimate, nondiscriminatory reasons for the action taken by the employer may include, but are not limited to, insubordination or the inability of the claimant to safely and substantially perform, with reasonable accommodations, the essential functions of the job in question. Id. Finally, if the employer establishes a nondiscriminatory reason for the action taken, then the claimant must demonstrate that the employer's stated reason was a pretext for impermissible discrimination. Id.[2]
In advancing its motion for summary judgment, Crown argued that Morrison could not set forth a prima facie claim of handicap discrimination. First, Crown argued that the written warning (1) was not an adverse employment action because it was retracted within an hour and (2) was not issued on account of Morrison's alleged handicap. Second, it argued that Morrison's three day suspension and removal from the premises were not undertaken as a result of his alleged disability. With regard the written warning, Crown pointed to the collective bargaining agreement, claiming that, pursuant to the terms of that agreement, when an employee accumulates two absences and one tardy within one month's time, a written warning is issued. This fact is undisputed.
In response, Morrison attempted to sidestep Crown's evidence and contended that his absence on Wednesday, August 30, 1995 should have been excused retroactively. Such an argument is misplaced. This Court will not delve into the world of business management. Rather, it is charged with the duty of reviewing trial court decisions for error and interpreting the law, not creating retroactive guidelines for disciplinary procedures under a collective bargaining agreement. Moreover, this Court observes that Morrison was advised, prior to his absence on Wednesday, August 30, 1995 that he would only be excused from 9:00 a.m. to 1:00 p.m.[3] In spite of these directions, he took the entire day hoping for retroactive application of the third medical note that he acquired while taking an unexcused absence. As a result, assuming, without deciding, that Morrison has presented genuine issues of material fact as to the first and third elements of theprima facie case, he nevertheless has failed to meet his burden underDresher as to whether Crown issued him a written warning, at least in part, due to his alleged handicap. He failed to produce any evidence that Crown's initial decision to issue the warning was made on account of his alleged handicap. Therefore, the trial court's grant of summary judgment in favor of Crown, as to the written warning, was proper.
As for the three day suspension and escorted removal, Crown argued that such measures were a result of Morrison's misconduct in McVay's office. To support this position, Crown offered McVay's version of the confrontation in which she stated that (1) Morrison came at her across the desk, (2) he yelled obscenities at her and Glasky, and (3) both she and Glasky believed Morrison had threatened them. Crown has also pointed to portions of Morrison's deposition in which he conceded that he had no evidence that Crown's actions were a result of his alleged handicap.
Notwithstanding his admission, Morrison has argued that he was "baited" into his alarming actions by the written warning. He has claimed that the events of September 7 and 8, 1995 must be viewed together, and when done so, that they disclose a scheme to provoke and then punish him because of his alleged handicap. Morrison's logic is undone, however, by the undisputed fact that he requested the meeting in which he threatened Glasky and McVay. He cannot shift the blame for the result of a meeting he requested and from which he had to be removed. Thus, as Crown aptly pointed out, beyond the mere fact that Crown knew that Morrison was on disability and had received several medical notes related to the same, Morrison has failed to produce any evidence that his suspension and removal on September 8, 1995 were on account of his illnesses. In light of the foregoing, as to Morrison's allegation that Crown's decision to suspend him and escort him from the workplace was discrimination, the trial court's grant of summary judgment in favor of Crown was proper.
 D. Reasonable Accommodation
Pursuant to Ohio Adm. Code 4112-5-08(E)(1), employers "must make reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business." Reasonable accommodations include, but are not limited to, job restructuring and modified work schedules. Ohio Adm. Code 4112-5-08(E)(2). Indeed, accommodations are only unreasonable if they appear to place an undue burden upon the employer. Wooten v. Columbus, Div. of Water (1993), 91 Ohio App.3d 326,334.
In the case at bar, Morrison has alleged that Crown unlawfully denied him a reasonable accommodation when it initially failed to grant his request to have every Wednesday off in order to attend group therapy. He has argued that even though his reprimand was rescinded and his request ultimately granted, that Crown engaged in a discriminatory practice. This Court is not persuaded.
As Morrison mentioned in his brief, the first medical note did not specify that Morrison's therapy session required him to be absent the entire day. That note stated, in pertinent part, "The patient may need to attend a post hospital follow-up group on Wednesdays from 10:00 A.M. to 12:00 noon. Please release him to attend this group for follow up care, if necessary." (Emphasis added.) Clearly, the note only asked that Morrison be excused for a two-hour session and it was less than precise even then. The note did not state that Morrison's therapy was required nor that he would need the whole day off to attend. As a matter of law, the grant of an entire day off, when an employee's condition and the surrounding circumstances only require an adjustment of a few hours in the work schedule, places an undue hardship on an employer. Common sense dictates that when only a few hours are required, employers should not have to excuse employees for an entire day.[4] Without further information, Crown correctly concluded that Morrison's first request for an entire day was unreasonable. Because the facts are undisputed on this point, this Court concludes that, as a matter of law, the trial court's grant of summary judgment as to this claim was proper.
 E. Intentional Infliction of Emotional Distress
In the employer-employee context, a claim for intentional infliction of emotional distress requires the employee to show that (1) the employer intended to cause emotional distress, or knew or should have known that the actions taken would result in serious emotional distress; (2) the employer's conduct was extreme and outrageous; (3) the employer's actions proximately caused the employee's psychic injury; and (4) the mental anguish the employee suffered was serious. Thatcher, 117 Ohio App.3d at 542. The Ohio Supreme Court has stated that "[i]t would be absurd for the law to seek to secure universal peace of mind, and many interferences with it must of necessity be left to other agencies of social control." Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374, quoting Prosser, Law of Torts (4 Ed. 1971) 51, Section 12. Conduct rises to the level of extreme and outrageous only if it goes beyond all bounds of decency, can be regarded as atrocious and intolerable in a civilized society and would lead an average member of the community to exclaim, "Outrageous!" Thatcher, at 542. The facts and circumstances of this case do not rise to such a level.
Crown argued, in support of its motion for summary judgment, that its actions were consistent with the collective bargaining agreement and that the attendance policy therein had even been enforced against Morrison previously without complaint. It further argued that, in light of the medical notes' language, it had no knowledge that Morrison might be particularly susceptible to emotional distress. In support of these arguments, Crown directed the trial court's attention to the collective bargaining agreement, the medical notes and copies of Morrison's previous written warnings. Morrison, in turn, failed to submit any evidence. Indeed, he confined his arguments to whether damages for intentional infliction of emotional distress should be permitted under R.C. 4112.02 and 4112.99.
After reviewing the record, this Court holds that the initial denial of Morrison's request for every Wednesday does not go beyond the bounds of all decency. As noted previously, common sense supports the company's action. Likewise, the three-day suspension was reasonable under the circumstances; Morrison's supervisors feared for their own safety. Such a response by an employer would not cause an average member of this community to exclaim, "Outrageous!" Therefore, as a matter of law, the trial court properly entered summary judgment in favor of Crown on Morrison's intentional infliction of emotional distress claim.
 III.
Morrison's assignments of error are overruled. The judgment of the trial court is affirmed.
 __________________ BETH WHITMORE FOR THE COURT
SLABY, P.J., CARR, J., CONCUR.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
[1] Morrison did not attend the August 23, 1995 session.
[2] On appeal, Morrison has argued that the trial court erred by not addressing whether Crown's stated motives were pretextual. Morrison has summarily argued that he satisfied the three prong test to establish a prima facie case of discrimination and immediately has leaped to his argument claiming summary judgment was inappropriate because a genuine issue of material fact exists as to Crown's motive for its delivery of the written warning and subsequent suspension. Indeed, Morrison has put the proverbial horse before the cart, and this Court disregards his arguments to that extent.
[3] This Court notes that Crown's position on this matter is consistent with the first medical note Morrison presented to the company.
[4] The fact that the written warning was destroyed and that Crown ultimately granted Morrison's request, after the third medical note was submitted, does not impact this decision. In his complaint, Morrison only alleged that the initial denial was unlawful.