JOURNAL ENTRY AND OPINION
Appellant, Nancy Wiggins, is appealing the trial court's grant of summary judgment in favor of appellee, Dr. Gary Waltz. She contends that her medical malpractice action was filed within the statute of limitations. She also contends there were sufficient facts to support her claim of intentional infliction of emotional distress. For the following reasons, we affirm.
Appellant deposed that she began seeing appellee, a psychiatrist, in 1986. Appellee diagnosed her as having a borderline personality disorder and post-traumatic stress syndrome. She also struggled with a fear of abandonment.
In 1995, appellant was having problems with her fourteen year old daughter, Becky. In October 1995, appellant was confused by the advice from appellee. Appellant started taking notes of counseling sessions. Appellee said that if he could not speak freely with Becky's counselor, Ms. Weissman, he would no longer treat appellant.
On October 26, 1995, appellant did not appear for her scheduled appointment. In a telephone conversation, appellant said she could not give appellee permission to freely talk to Ms. Weissman. Appellant said the stress of the ultimatum was causing her to throw up blood. Appellee said if she did not make her appointment on October 27 her treatment was over. Appellant never returned to treatment.
Appellant admitted in deposition that in late October, 1995, she chose to end her treatment with Dr. Waltz. Appellant deposed, "When I finally achieved what I wanted to in terms of setting boundaries as a parent . . . I terminated the treatment."
On November 1, 1995, appellee sent appellant a letter to persuade her to return to treatment on appellee's terms. The letter used analysis from past counseling sessions. The letter also requested payment for services rendered.
Sometime after November 1, appellant contacted the Cleveland Psychoanalysis Society, who referred her to Dr. McKenzie. Dr. McKenzie said it was not standard and reasonable to make such an ultimatum for continued treatment. McKenzie said appellant was entitled to an explanation.
Dr. McKenzie referred appellant to a licensed social worker, Sarah Malone. Appellant saw Ms. Malone on November 6, 1995. Ms. Malone's notes state that appellant suffered trauma because of the perceived betrayal by appellee.
Appellee sent appellant several more letters requesting payment. The letters included analysis from appellant's treatment.
In a letter dated December 28, 1995, appellant advised appellee that she had consulted with the Cleveland Psychoanalytical Society. She requested an explanation of why he imposed the ultimatum.
Appellee sent appellant numerous letters explaining why he needed to speak freely with Ms. Weissman. The letters used psychological interpretations and conclusions from treatment. Appellant felt appellee used information learned in treatment and turned it against her. Appellee also threatened to turn the matter of the debt over to a collection agency.
Appellant requested appellee send her records. Appellee's letter to appellant dated February 8, 1996 stated that appellee had lost some of appellant's records at a copy store. Appellant was in terror because appellee usually used the copy store near the school where she taught. Later, Dr. Waltz admitted that the notes in question were not lost, but he never took any notes during the time period for which notes were requested.
Appellant deposed that the termination of treatment with Dr. Waltz was very difficult for her. She had trouble sleeping. Her digestive problems were aggravated. She felt abandoned and suicidal. The whole incident shook her confidence in the entire psychotherapeutic profession. In March of 1996, appellant received medical treatment for chronic nausea, vomiting and weight loss. Appellant feels these physical ailments were caused by appellee.
On April 25, 1996, the Cleveland Psychoanalytical Society's Ethics Committee found that appellee had breached confidentiality by telling Ms. Weissman (1) appellant had terminated treatment and (2) appellant accused appellee of breach of confidentiality. The Society found that appellee aggressively used threats and ultimatums to coerce appellant to return to treatment under his terms.
The report of Appellant's expert, Dr. Abramson, stated that appellee's letters used psychological interpretations and conclusions from her treatment, as well as threats and ultimatums, in order to manipulate appellant. Appellee failed to maintain care at a professional standard by failure to maintain confidentiality, abandonment, threats and ultimatums, boundary violations, and improper diagnosis and treatment. As a result, appellant experienced the trauma of Dr. Waltz's betrayal and inappropriate conduct which exacerbated her underlying psycho pathology and resulted in severe impediments to successful treatment in the future.
Appellant deposed that she did not improve in nine years of therapy. Later she admitted that she had improved in some respects. At an unknown time, appellant contacted Dr. Nancy Rubel, who informed appellant that she was not receiving the proper treatment for post-traumatic stress disorder. The report of the Cleveland Psychoanalytic Society said that appellant, "obviously gained a great deal from treatment."
Appellee deposed that appellant greatly improved during treatment. Appellee knew that there was a risk that appellant would choose to terminate the relationship and reactivate her fears of abandonment. There was also a risk of suicidality and increased anxiety. He felt the ability to communicate with Ms. Weissman was so important that it outweighed the risks.
 I.
Appellant's first assignment of error states:
 THE TRIAL COURT ERRED IN GRANTING A MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S MEDICAL MALPRACTICE CLAIM.
Summary judgment is appropriate upon the demonstration that: (1) there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. See Civ.R. 56(C),Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66. Appellee's motion for summary judgment argued that reasonable minds could only conclude that appellant's medical malpractice action was not timely filed. An action for medical malpractice must be filed within one year after the action accrued. R.C.2305.11(B)(1).
 [A] cause of action accrues and the statute of limitation begins to run when patient discovers, or in exercise of reasonable care and diligence, should have discovered, the resulting injury, or when physician-patient relationship for that condition terminates, whichever occurs later.
Frysinger v. Leech (1987), 32 Ohio St.3d 38.
The doctor-patient relationship terminates the day the patient fails to keep an appointment and declines to see the physician again. Millbaugh v. Gilmore (1972), 30 Ohio St.2d 319. The relationship terminates when the patient refuses to submit to further treatment or either party takes affirmative steps to terminate the relationship. Wells v. Johenning (1989),63 Ohio App.3d 364. A physician-patient relationship can continue even after a missed appointment if the doctor continues to see the patient and the patient is taking medicine under the doctor's supervision. Ishler v. Miller (1978), 56 Ohio St.2d 447, 457.
Appellant asserts that the doctor-patient relationship continued after the date of her missed appointment on October 26, 1995. According to appellant, appellee's refusal to see her until she complied with appellee's conditions was a treatment, known as a "tough love" contract. Also, appellee's letters to appellant continued to diagnose appellant and give her advice. Appellee's letter explaining his treatment plan was medical treatment. Appellee's letter dated January 9, 1996 referred to the "termination, or at least interruption, in treatment."
After reviewing the letters and other evidence in this case, we find that reasonable minds could only conclude that psychiatric treatment did not continue after October 26, 1995. Appellee imposed an ultimatum for continued treatment as a way to deal with appellant's acting out. Appellee never stated that imposing conditions for continued treatment would itself constitute treatment, if appellant refused the conditions. Reasonable minds can only conclude that the letters and phone calls that took place did not amount to psychiatric treatment. Appellee's reference to an interruption in treatment only refers to the possibility that appellant might return to treatment. The depositions and letters written by both parties indicate that both parties considered the doctor-patient relationship over in late October, 1995.
Appellant contends that she did not discover, nor should she have discovered the appellee's malpractice until April, 1996. A medical malpractice action accrues
. . . upon the occurrence of a "cognizable event" which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies.
Allenius v. Thomas (1989), 42 Ohio St.3d 131, 133. The law does not require the plaintiff to be certain malpractice occurred, rather the cognizable event imposes upon plaintiff the duty to determine whether the injury suffered is the proximate result of malpractice. Flowers v. Walker (1992), 63 Ohio St.3d 546,549-550.
In October, 1995, appellant was aware that she was suffering physical and psychological symptoms as a result of the termination of treatment. Appellant conferred with other doctors in November, 1995 to see if appellee's conditions for continued treatment were standard and reasonable. Reasonable minds can only conclude that in November, 1995, appellant believed or should have believed that her condition was related to improper psychiatric care.
The cognizable event took place in November, 1995. The physician-patient relationship terminated on October 26, 1995. This lawsuit, filed December 23, 1996, was not timely filed.
Accordingly, this assignment of error is overruled.
 II.
Appellant's second assignment of error states:
 THE TRIAL COURT ERRED IN GRANTING A MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S INTENTIONAL AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS CLAIM.
 A claim for intentional infliction of emotional distress requires plaintiff to show that (1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendants actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious.
Hanly v. Riverside Methodist Hosp. (1991), 78 Ohio App.3d 73, 82. See also Yeager v. Local Union 20, Teamsters, Chauffeurs,Warehousemen, Helpers of America (1983). 6 Ohio St.3d 369, 374;Tschantz v. Ferguson (1994), 97 Ohio App.3d 693. Extreme and outrageous conduct occurs,
. . . only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'
 The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.
Yeager, supra at 376. Extreme and outrageous character of conduct may arise from abuse of a position and/or from the actor's knowledge that the other is peculiarly susceptible to emotional distress. Tschantz, supra at 712; Mason v. U.S. Fid. Guar. Co.
(1990), 69 Ohio App.3d 309, 317. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of knowledge of the plaintiff's susceptibility, where it would not be so if he did not know. Foster v. McDevitt (1986),31 Ohio App.3d 237, 240. Major outrage is essential, not just the knowledge that the other will be insulted or have his feelings hurt. Id.
In this case, appellee held a position of trust and confidence as appellant's psychiatrist. Appellee felt it necessary to impose a condition on continued therapy, although he knew appellant could experience suicidal feelings or anxiety if the therapeutic relationship was discontinued. Even if it was not reasonable and standard to impose such a condition, it did not amount to extreme and outrageous conduct. Appellee tried to convince appellant to return to therapy, albeit, under his conditions.
A reasonable trier of fact could not find that appellee's letters were extreme and outrageous. Many of the letters constituted a normal attempt to collect a debt. Although the letters often presented a harsh and unkind analysis of appellant, they did not rise to the "extreme and outrageous" level. Additionally, appellant never told appellee to stop writing the letters. Appellee did not believe appellant would be offended by the comments in the letters.
Appellee told appellant he lost records in a copy store, when he was aware that appellant was very concerned about confidentiality. Later, appellee admitted he never had any notes. Arguably, a reasonable trier of fact could find that this amounted to extreme and outrageous conduct. However, although appellant deposed that this incident upset her, there is no evidence that this statement exacerbated her psychiatric condition and resulted in severe emotional distress. See McNeilv. Case Western Reserve University (1995), 105 Ohio App.3d 588,595.
Accordingly, this assignment of error is overruled.
The decision of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SWEENEY, J., AND CORRIGAN, J., CONCUR.
 __________________________________ ANN DYKE PRESIDING JUDGE