Defendant-appellant Steve Little appeals from the March 9, 1999, Judgment Entry of the Muskingum County Court of Common Pleas which entered judgment and an award of damages in favor of the plaintiff-appellee Thelma Bartley and the June 16, 1999, Judgment Entries denying defendant-appellant's Motions for New Trial, Judgment Notwithstanding the Verdict, and Relief from Judgment.
 STATEMENT OF THE FACTS AND CASE
On December 17, 1997, plaintiff-appellee Thelma Bartley [hereinafter appellee] filed a Complaint in the Muskingum County Court of Common Pleas against defendant-appellant Steve Little [hereinafter appellant]. The Complaint included claims for sexual assault, battery, rape, intentional infliction of emotional distress, and, in regards to appellee's two minor children, loss of consortium. Appellee alleged that the sexual assault occurred on December 21, 1996. Appellant filed an Answer denying the allegations of the Complaint and included a Counterclaim for defamation of character. The Counterclaim was dismissed with prejudice, prior to trial. A jury trial commenced on February 23, 1999, and concluded on March 4, 1999. The following evidence was elicted at trial: While appellee was a resident of Louisville, Kentucky, she met and began a romantic relationship with Jeff Schlaegel [hereinafter Schlaegel], a resident of Dresden, Ohio. As the relationship progressed, the couple became engaged and appellee moved to Dresden, where she resided with Schlaegel. Appellant was a friend of Schlaegel. Appellant met appellee through Schlaegel in 1996. After their meeting and until the rape, appellant and his wife socialized with appellee and Schlaegel on several occasions. On December 20, 1996, appellant attempted to contact Schlaegel at the residence shared by Schlaegel and appellee because Schlaegel and appellant had previously arranged to go Christmas shopping. However, Schlaegel was not home at the time of appellant's telephone call. Appellant spoke with appellee and learned that appellee's niece was arriving by Greyhound Bus in downtown Zanesville, Ohio. Appellant offered to drive appellee to the bus station to pick up her niece. Appellee accepted appellant's assistance and appellant, appellee and appellee's two children went to the bus station to await the arrival of the niece. However, the bus was delayed. While waiting on the bus, appellant and appellee purchased a six pack of beer and consumed some of the beer in the car. After the niece arrived, appellant took appellee, her niece, and appellee's two children back to the appellee's residence. Upon arriving home, it was discovered that Schlaegel was not home yet. Appellee attempted to phone Schlaegel at his office, but was unsuccessful. At that point, appellant left appellee's home and went to a local tavern, Green's Tea Room, where appellant met with his brother-in-law, Jack Hendel. Appellant consumed more alcohol. Thereafter, appellant and Hendel were called to appellant's home to remedy a problem with appellant's furnace. After a 15 to 20 minute visit at appellant's home, appellant and Hendel drove to appellee's residence, allegedly to determine whether Schlaegel had returned home. Schlaegel was not home yet and appellee had not been able to reach Schlaegel by phone. Appellant suggested that Schlaegel had probably returned home while they were at the bus station and finding no one at home, went to Green's Tea Room to have a beer. Appellee agreed to go with appellant to see if Schlaegel was at Green's Tea Room. Appellant drove Hendel and appellee to Green's Tea Room and another local tavern looking for Schlaegel. Since Schlaegel was not at either of these locations, appellant took appellee home. Thereafter, appellant returned to Green's Tea Room where he consumed more alcohol. By this time, appellee had reached Schlaegel by telephone. Schlaegel informed appellee that he had worked late on paperwork and would spend the night at his office. At approximately 1:30 A.M., while appellee was asleep, appellant returned to appellee's residence. Appellant claimed that he returned to the residence solely to determine whether Schlaegel had returned home as he still planned to do Christmas shopping, despite the late hour. Upon arrival at appellee's house, appellant entered through the garage entrance where he noticed that Schlaegel's truck was not in the garage. Nevertheless, appellant continued into the residence, without knocking or making his presence known. Appellant entered appellee's bedroom where he found her naked and sleeping. At that time, appellant left the residence and returned to Green's Tea Room where he consumed additional alcohol. At approximately 2:30 A.M., appellant left Green's Tea Room and returned to appellee's residence, claiming that he was looking for Schlaegel. Again, Schlaegel was not home nor was his truck in the garage. Appellant entered the residence unknown, entered appellee's bedroom, climbed on top of appellee, held her down and raped her from behind. Appellee testified that she pleaded with appellant to stop and to release her, but he refused. Appellant, however, claimed that appellee gave every indication to appellant that she did not object to having sex with him. When appellant was finished, he became very agitated. Appellee testified that appellant asked her to kill him. Thereafter, appellant left the residence. Appellee immediately called 9-1-1 and informed the Muskingum County Sheriff's Department of the incident. Appellant was arrested within minutes. Sheriff's deputies entered appellee's residence and removed numerous articles of clothing and bed coverings. Appellee was taken to the emergency room at Good Samaritan Medical Center where Dr. Joseph Stine examined appellee. During the examination, it was determined that appellee, who was menstruating, had a tampon forced up against her cervix. In the days that followed, appellant and Schlaegel had discussions about the incident and appellant agreed with Schlaegel that appellant would pay the medical expenses incurred and make reimbursement for certain items taken by the police. Appellant did pay for the medical expenses and items taken. At trial, appellant argued that it was his understanding that this was a complete and total settlement in regards to the alleged rape. Appellee, however, argued that this was merely payment for out-of-pocket expenses that appellee incurred because of the rape. On March 4, 1999, the jury reached a verdict against appellant and awarded appellee $40,000.00 for assault, $40,000.00 for battery and $20,000.00 for intentional infliction of emotional distress. The trial court filed a corresponding Judgment Entry on March 9, 1999. On March 18, 1999, appellant filed a Motion for New Trial pursuant to Civ.R. 59(A)(9), a Motion for New Trial pursuant to Civ.R. 59(A)(1), a Motion for Judgment Notwithstanding the Verdict pursuant to Civ.R. 50(B) and a Motion for Relief from Judgment pursuant to Civil Rule 60(B)(3) and 60(B)(5), and, in the alternative to the Motion for Relief, a Motion for Release of Plaintiff's Medical Records. On June 16, 1999, the trial court filed Judgment Entries overruling all of appellant's motions. It is from the March 9, 1999, and June 16, 1999, Judgment Entries that appellant brings this appeal, raising the following assignments of error:
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN PREVENTING DEFENSE COUNSEL FROM REVIEWING THE MEDICAL RECORDS OF PLAINTIFF THELMA BARTLEY FROM LOUISVILLE CHARTER HOSPITAL, AND OVERRULING DEFENDANT'S MOTION FOR NEW TRIAL RE [SIC] SAME.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE A PERSONAL JOURNAL SOLELY WRITTEN BY THELMA BARTLEY MONTHS AFTER THE INCIDENT IN QUESTION AND CONTAINING HEARSAY AND MANY SELF SERVING STATEMENTS AND OVERRULING DEFENDANT'S MOTION FOR NEW TRIAL RE [SIC] SAME.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY DENYING DEFENSE COUNSEL THE OPPORTUNITY TO PRESENT EVIDENCE OF PLAINTIFF [SIC] WITNESS DR. STEIN'S INCONSISTENT STATEMENTS RE [SIC] WHETHER OR NOT PLAINTIFF HAD SUFFERED FROM INVOLUNTARY SEX AND OVERRULING DEFENDANT'S MOTION FOR NEW TRIAL RE [SIC] SAME.
 FOURTH ASSIGNMENT OF ERROR THE JURY WAS PREJUDICED BY NEWSPAPER ARTICLE AND RADIO BROADCAST AD [SIC] AND THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR A MISTRIAL AND DEFENDANT'S POST-TRIAL MOTION FOR NEW TRIAL RE [SIC] SAME.
 FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN OVERRULING DEFENDANT/APPELLANT'S MOTIONS FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(B) [SIC] REQUESTING A HEARING SO THE ISSUE OF THE LOUISVILLE MEDICAL RECORDS COULD BE ADDRESSED AND OVERRULING DEFENDANT'S MOTION FOR NEW TRIAL RE [SIC] SAME.
 SIXTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING DEFENDANT'S POST-TRIAL MOTION PURSUANT TO CIVIL RULE 50(B) ALLEGING THAT PLAINTIFF CAN NOT RECEIVE DAMAGES FOR BOTH ASSAULT AND BATTERY.
 SEVENTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT SUSTAINING DEFENDANT'S MOTION FOR DIRECTED VERDICT ON THE CAUSES OF ACTION RE [SIC] SERIOUS EMOTIONAL DISTRESS.
 EIGHTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT REDUCING THE JUDGMENT BY, [SIC] THE AMOUNT PREVIOUSLY PAID BY DEFENDANT TO PLAINTIFF.
 NINTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN ALLOWING DR. STEIN TO GIVE AN OPINION ON WHETHER THE PLAINTIFF WAS RAPED.
 I
In the first assignment of error, appellant argues that the trial court erred when it prevented appellant from reviewing the appellee's Louisville Charter Hospital medical records and overruling appellant's Motion for New Trial based upon that argument. We disagree. The record indicates that appellant failed to subpoena the records from the hospital. In fact, no request for these documents was filed prior to the start of trial whatsoever. Mid-trial, appellant's counsel served a subpoena duces tecum upon the County Prosecutor and Sheriff's Department in an attempt to receive the victim's medical records from those governmental offices, pursuant to the Public Records Act, R. C. 149.43. TR 723-727 806-807. However, medical records are specifically excluded from the documents that may be obtained through the Public Records Act. While appellant may have been entitled to receive these records through discovery since appellee as plaintiff brought a claim for intentional infliction of emotional distress, we find that the trial court did not err in failing to provide these records to appellant from the Prosecutor or Sheriff's Offices, pursuant to a mid-trial motion based upon an argument that the medical records were public records. As to appellant's argument that the trial court erred when it denied his Motion for New Trial based upon the issue of the Louisville medical records, we find that appellant's argument fails. Appellant filed a Motion for New Trial pursuant to Civ.R. 59(A)(9), arguing that there were errors of law which occurred during the trial so as to entitle appellant to a new trial. One of the arguments presented was that the trial court prevented appellant from reviewing the appellee's medical records from Louisville Charter Hospital. Civ.R. 59 sets forth the basis for granting a motion for a new trial. In considering a motion for new trial, the trial court must exercise its discretion in determining whether a new trial is warranted under the circumstances. An appellate court, when reviewing that decision, may reverse only where it finds an abuse of discretion. The reviewing court is not to substitute its judgment for that of the trial court. Verbon v. Pennese (1982), 7 Ohio App.3d 182, 454 N.E.2d 976; Markan v. Sawchyn (1987), 36 Ohio App.3d 136, 521 N.E.2d 824. See, also, Rohde v. Farmer (1970), 23 Ohio St.2d 82, 262 N.E.2d 685. Pursuant to our holding that the trial court did not error when it failed to provide the medical records to appellant, pursuant to the Public Records Act, we find that the trial court did not abuse its discretion when it denied appellant's Motion for New Trial on those grounds. Appellant's first assignment of error is overruled.
 II
In the second assignment of error, appellant contends that the trial court erred when it admitted into evidence a personal journal written by the victim. Further, appellant contends that the trial court erred when it overruled appellant's Motion for a New Trial based upon the alleged error. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of syllabus; State v. Finnerty (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233. Absent an abuse of discretion, a ruling will not be disturbed upon appeal. An abuse of discretion connotes more than a mere error in law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. It implies an arbitrary, unreasonable or unconscionable attitude on the part of the trial court. Id. Appellant argues that the journal was inadmissible hearsay. The trial court admitted the journal as an Evid.R. 803(3) exception to hearsay. The trial court further noted that defense counsel had cross examined appellee by using excerpts from the journal and therefore the jury should be able to see the entire document. TR 748-749. Appellee concedes that the journal constituted hearsay. However, appellee argues that the trial court was correct when it found the journal was admissible as an exception to the hearsay rule, under Evid.R. 803(3), as evidencing a "then existing, mental, emotional or physical condition." We agree with the trial court that the journal was admissible pursuant to Evid.R. 803(3) and find that the trial court did not abuse its discretion in regard to the admission of the journal. Evidence Rule 803(3) states: The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(3) Then existing, mental, emotional, or physical condition; A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.
"When state of mind is relevant it may be proved by contemporaneous declarations of feeling and intent. State v. Apanovitch (1987),33 Ohio St.3d 19. Appellee's mental and emotional state was at issue in this case pursuant to her intentional infliction of emotional distress cause of action. A review of the record, including the redacted journal, demonstrates that the journal was admitted for the purpose of evidencing the appellee's mental and emotional state after the rape. The journal demonstrates the emotional turmoil appellee was experiencing at the time she wrote the passages in the journal. Therefore, we find that the trial court did not abuse its discretion in admitting the journal. Appellant argues that even if the journal were admissible, the prejudicial value outweighed the probative value of the journal and that the journal constituted cumulative evidence. Appellant's argument is based upon Evid.R. 403(A) (B), which state: (A) Exclusion mandatory Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. (B) Exclusion discretionary Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.
We will first address appellant's argument that the probative value of the journal was substantially outweighed by considerations of needless presentation of cumulative evidence. Evid.R. 403(B). Upon review of the journal and the testimony of appellee, the journal was cumulative in so much as it included allegations that the rape occurred, to which appellee testified. However, the journal also included evidence demonstrating the mental and emotional state of appellee subsequent to the rape that was not specifically testified to by appellee. This evidence was very probative to appellant's claim of intentional infliction of emotional distress. Therefore, we find the trial court did not abuse its discretion when it admitted the journal, notwithstanding Evid.R. 403(B). Next, we will address appellant's argument made pursuant to Evid.R. 403(A), claiming unfair prejudice. In an effort to show this court that the journal was overly prejudicial to appellant, appellant presented an "affidavit" from one of the jurors. Appellant argues that the "affidavit" demonstrates that the jury changed its mind as to how to vote based upon the contents of the journal. This court has grave reservations as to whether the "affidavit" may be considered by this court. However, even if the court were to consider this "affidavit," appellant's argument must fail. The test under Evid.R. 403(A) is not based upon whether the piece of evidence influenced the jury. The test is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudicial effect. Upon review, we find that the danger of unfair prejudicial effect did not substantially outweigh the probative value of the journal and, therefore, the trial court did not abuse its discretion in admitting the journal. Appellee and appellant both testified giving the jury the ability to assess each party's credibility. Appellant cross examined appellee in regards to the journal and the circumstances under which it was written. We find no abuse of discretion. Appellant also argues that the trial court erred when it denied appellant's Motion for a New Trial on this issue. Appellant filed a Motion for New Trial pursuant to Civ.R. 59(A)(9), arguing that there were irregularities which occurred during the trial, so as to entitle appellant to a new trial. One of those issues was that the trial court erred when it failed to grant a new trial due to the admission of appellee's journal. Civil Rule 59 sets forth the basis for granting a motion for a new trial. In considering a motion for new trial, the trial court must exercise its discretion in determining whether a new trial is warranted under the circumstances. As discussed in assignment of error I, an appellate court, when reviewing that decision, may reverse only where it finds an abuse of discretion. The reviewing court is not to substitute its judgment for that of the trial court. Verbon v. Pennese (1982), 7 Ohio App.3d 182, 454 N.E.2d 976; Markan v. Sawchyn (1987), 36 Ohio App.3d 136, 521 N.E.2d 824. See, also, Rohde v. Farmer (1970), 23 Ohio St.2d 82, 262 N.E.2d 685. Pursuant to our holding that the trial court did not abuse its discretion when it admitted the journal, we find that the trial court did not abuse its discretion when it denied appellant's Motion for New Trial on those same grounds. Appellant's second assignment of error is overruled.
 III
In the third assignment, appellant argues that he was denied the opportunity to present evidence that Dr. Stein made inconsistent statements regarding whether or not the victim showed "abnormal signs of sexual assault." Further, appellant contends the trial court erred when it overruled appellant's motion for new trial which was based upon this issue. Appellant asserts that Dr. Stein made a statement to Detective Hartmeyer in a phone interview, stating that an examination of the victim revealed no "abnormal signs of sexual assault." Key to appellant's argument is his assertion that, at trial, Dr. Stein refused to acknowledge that he made such a statement. Subsequent to appellant's cross examination of Dr. Stein, appellant attempted to question Detective Hartmeyer about Dr. Stein's comment but was prevented from doing so by the trial court. Appellant asserts that he conformed to Evid.R. 613 and that, without Detective Hartmeyer's testimony regarding Dr. Stein's inconsistent prior statement, "the statement's existence was obliterated by the court's ruling." Appellant's Merit Brief, page 12-13. In order to invoke Evid.R. 613, there must be a prior inconsistent statement. Appellant has failed to establish that Dr. Stein's testimony at trial was inconsistent with his prior statement to Detective Hartmeyer. Upon our review of Dr. Stein's testimony, Dr. Stein admitted making the comment, as reflected in the following testimony: Q. All right. If his interview is correct, and he may have a recording of it, you told him [Detective Hartmeyer] your opinion was, quote, no abnormal signs of sexual assault. That's what he wrote. We'll see if that's what you said. A. That's what was stated. Q. Okay. That's not his opinion, that's yours, right, to him? A. Correct. I was asked if there was any evidence of physical injury, and that was my response.
Tr. 457
Further, Dr. Stein testified that he found no physical evidence of injury, other than the fact that the victim's tampon had been forced up against her cervix. Dr. Stein's testimony on the witness stand was consistent with the alleged prior statement, as recorded by Detective Hartmeyer. Therefore, we find that appellant's argument must fail. As to appellant's Motion for a New Trial, pursuant to our holding that Dr. Stein acknowledged his prior statement, we find that the trial court did not abuse its discretion in overruling appellant's Motion. Appellant's third assignment of error is overruled.
 IV
In the fourth assignment of error, appellant claims that the jury was prejudiced by a newspaper article and radio broadcast regarding the trial. Therefore, appellant argues the trial court erred in overruling appellant's Motion for a Mistrial, as well as, appellant's post-trial Motion for a New Trial on this issue. Our standard of review for this issue is abuse of discretion. State v. Weind (1977), 50 Ohio St.2d 224,236, 364 N.E.2d 224. Initially, we note that the trial court had previously instructed the jury to "not read, view, or listen to any news media reports on the subject of the trial" nor to "permit anyone to read or comment upon them to you or in your presence." TR 99. A jury is presumed to follow the instructions given it by the trial judge. State v. Garner (1995), 74 Ohio St.3d 49, 59. We review this assignment of error in light of this presumption. This issue arose on the third day of trial when a front page newspaper article about the trial appeared in the local newspaper. The headline was: "Rape trial under way in Common Pleas Court." The article included information about appellant's criminal conviction for gross sexual imposition as a result of the incident. Evidence of this conviction was not presented to the jury. The morning that the article appeared, the trial court addressed the issue with the jury. The trial court first asked if any juror had read the newspaper. The record reflects that no juror responded affirmatively. TR 378. When the jury was asked: "Has any member of your family, or friend, who's read the paper this morning, discussed what was in the paper?", one juror responded that "My wife just asked me, `Is this it?' It was in the paper this morning." TR 378-379. Upon further questioning, the juror stated that his wife asked the juror if that was the case he was sitting on. Although the juror admitted that he saw a portion of the headline, only indicating that it was a "rape case", he stated that there was no further conversation about the newspaper article. TR 380. The juror was quite clear that he had not read the article. At the end of the voir dire of this juror, defense counsel stated that the juror questioned could be "fair and impartial" and that counsel "trust[ed] him." TR 390. Appellant's trial counsel was repeatedly asked if there was an objection to that juror remaining on the jury and defense counsel repeatedly responded that he did not have an objection to his remaining on the jury. Further, each of the other jurors was questioned in voir dire, out of the presence of the other jurors, and each stated they had not read the article nor heard any news about the case, other than that they had heard it was in the paper and may have been talked about on the radio. All denied receiving any substantive information from the newspaper or radio broadcast. TR 394 — 421. The record does not support appellant's contention that the jury was prejudiced by the media coverage. The jury was not aware of the contents of the newspaper articles or any other news reports. The jurors denied any knowledge as to the substantive information in the news. We find that the trial court did not abuse its discretion in the refusing appellant's Motion for Mistrial. Appellant also argues that the trial court erred when it denied appellant's Motion for a New Trial on this issue. Appellant filed a Motion for New Trial pursuant to Civ.R. 59(A)(1), arguing that there were irregularities which occurred during the trial, so as to entitle appellant to a new trial. Appellant argued that the trial court erred when it failed to declare a mistrial when the local newspaper ran a front page article which included a declaration that appellant had pled no contest to gross sexual imposition. As discussed previously, Civ.R. 59 sets forth the basis for granting a motion for a new trial. In considering a motion for new trial, the trial court must exercise its discretion in determining whether a new trial is warranted under the circumstances. An appellate court, when reviewing that decision, may reverse only where it finds an abuse of discretion. The reviewing court is not to substitute its judgment for that of the trial court. Verbon v. Pennese (1982), supra; Markan v. Sawchyn (1987), supra. See, also, Rohde v. Farmer (1970), supra. Pursuant to our holding that the trial court did not abuse its discretion when it failed to grant appellant's Motion for a Mistrial, we find that the trial court did not abuse its discretion when it denied appellant's Motion for New Trial on those same grounds. Appellant's fourth assignment of error is overruled.
 V
In the fifth assignment of error, appellant argues that the trial court erred when it overruled appellant's Motion for Relief from Judgment pursuant to Civ.R. 60(B)(3) (5), which requested a hearing on the issue of the victim's Louisville Charter Hospital medical records. Further, appellant argues that the trial court erred when it overruled appellant's Motion for New Trial which was based upon the same issue. We disagree. In relevant part, Civ.R. 60(B) states: On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; or (5) any other reason justifying relief from the judgment.
A movant for relief from judgment under Civ.R. 60(B) must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1)-(5); and (3) the motion is made within a reasonable time. GTE Automatic Electric, Inc. v. ARC Industries, Inc. (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus. The movant must submit factual material with his motion which demonstrates grounds which, if true, would constitute a defense to the action. E.g., Matson v. Marks (1972), 32 Ohio App.2d 319, 327,291 N.E.2d 491. The motion must be supported with evidence of at least affidavit quality. East Ohio Gas v. Walker (1978), 59 Ohio App.2d 216,220, 394 N.E.2d 348. Where the motion and supporting evidence contain sufficient allegations of operative facts which would support a meritorious defense to the judgment, the court must assign the matter for evidentiary hearing. BancOhio Natl. Bank v. Schiesswohl (1988),51 Ohio App.3d 130, 554 N.E.2d 1362, at paragraph one of the syllabus. The standard of review of a Civ.R. 60(B) motion is abuse of discretion. GTE Automatic Elec., Inc. v. ARC Industries, Inc. (1976), 47 Ohio St.2d 146
. Therefore, we must determine whether the trial court abused its discretion in denying appellant a hearing on the motion and in overruling appellant's motion for relief from judgment. In the case sub judice, appellant filed a Motion for Relief from Judgment, pursuant to Civ.R. 60(B), but did not attach any evidence. Instead, appellant argued that when he saw the victim's medical records sitting on the trial court's desk, they appeared to be too voluminous to be consistent with the victim's testimony at trial. Appellant attached a Motion to his Civ.R. 60(B) Motion requesting that the trial court release the victim's Louisville medical records so that they could be reviewed to determine if the victim's trial testimony was accurate. We find this to be a veiled attempt to obtain the victim's medical records. As discussed in assignment of error I, there was a proper method to obtain the victim's medical records and appellant did not pursue that method. However, applying the standard of review for Civ.R. 60(B) issues raised upon appeal, we find the trial court did not abuse its discretion in failing to set this matter for an evidentiary hearing. Appellant failed to present evidentiary materials or sufficient operative facts in support of the Motion to be entitled to a hearing on the Motion. Further, the trial court did not abuse its discretion in overruling appellant's Civ.R. 60(B) Motion. Appellant failed to demonstrate that appellant had a meritorious defense or claim to present if relief was granted or that he was entitled to relief under one of the grounds stated in Civ.R. 60(B)(3)(5). Rather, appellant appears to be on a fishing expedition and presents no real operative facts or evidence. Therefore, the trial court did not abuse its discretion in failing to hold a hearing on the Civ.R. 60(B) Motion or in denying appellant's Motion itself. We understand appellant's assignment of error to include an argument that the trial court further erred when it failed to grant a Motion for a New Trial on the issue of the release of appellant's Medical Records. Pursuant to our holding in assignment of error I, regarding release of appellee's medical records to appellant, and our review of this assignment of error, we find that the trial court did not abuse its discretion when it overruled appellant's Motion for New Trial in regards to appellee's medical records. Appellant's fifth assignment of error is overruled.
 VI
In the sixth assignment of error, appellant contends that the trial court erred when it denied appellant's Civ.R. 50(B), Motion for a Verdict Notwithstanding, which alleged that appellee could not receive damages for both assault and battery. We disagree. The standard for granting a motion for judgment notwithstanding the verdict or in the alternative for a new trial pursuant to Civ.R. 50(B), is the same as that for granting a motion for a directed verdict pursuant to Civ.R. 50(A). Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 121, 671 N.E.2d 252, 256, fn. 2 (citing Gladon v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 318-319, 662 N.E.2d 287, 294; and Posin v. A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338). Civ.R. 50(A)(4) states: When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
Although it is necessary to review and consider the evidence, a motion for judgment notwithstanding the verdict is a question of law, not a question of fact. Whitenight v. Dominique (1995), 102 Ohio App.3d 769,658 N.E.2d 23. Therefore, the review of the motion does not entail a weighing of the evidence or an assessment of the credibility of the witnesses. White v. Center Mfg. Co. (1998), 126 Ohio App.3d 715,711 N.E.2d 281. In considering a defendant's motion for judgment notwithstanding verdict, the trial court must assume the truth of plaintiff's evidence as shown by the record, grant such evidence its most favorable interpretation, and consider as established every material fact which the evidence tends to prove. Miller v. Paulson (1994),97 Ohio App.3d 217, 646 N.E.2d 521. Appellant concedes that appellee could rightfully ask the jury to consider both assault and battery, but argues that a finding as to both and an award as to both is inconsistent. Appellant argues that the jury found appellant's conduct constituted a battery and, therefore, if battery was committed, no assault occurred. We disagree. The tort of assault is "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." Smith v. John Deere Co. (1993), 83 Ohio App.3d 398, 406, 614 N.E.2d 1148, 1154. A key element of assault is that the alleged tortfeasor "knew with substantial certainty that his or her act would bring about harmful or offensive contact." Id. Battery results when an individual "acts intending to cause a harmful or offensive contact, and when a harmful contact results." Love v. Port Clinton (1988), 37 Ohio St.3d 98, 99, 524 N.E.2d 166, 167. Assault and battery constitute two different torts and, therefore, a party can be awarded damages for both assault and battery. Appellant argues, without citation to the record, that the victim confirmed that appellant made no threats against her. However, appellant's conduct was such that it placed appellee in fear of and under threat of unwanted contact, even if such threats were non-verbal. Therefore, such conduct constitutes assault. Further, the act of rape constituted offensive contact and, therefore, battery. Lastly, we note that appellant failed to object to the jury instructions as provided to the jury. These jury instructions included definitions of the torts of assault and battery and did not instruct the jury to choose between these torts in awarding damages. "On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). Since appellant did not object to the jury instructions, we must overrule appellant's argument, to the extent that the verdict is the result of the instructions provided to the jury. Therefore, the trial court properly denied appellant's motion for judgment notwithstanding the verdict. Appellant's sixth assignment of error is overruled.
 VII
In the seventh assignment of error, appellant argues that the trial court erred in not sustaining appellant's Motions for Directed Verdict regarding the intentional infliction of emotional distress cause of action. We disagree. The appeal of a grant or denial of a motion for a directed verdict presents a question of law. An appellate court must conduct a de novo review of the trial court's judgment. Nichols v. Hanzel (1996), 110 Ohio App.3d 591, 599, 674 N.E.2d 1237. In considering a motion for a directed verdict, the court must construe the evidence most strongly in favor of the non-movant, and if it finds upon any determinative issue reasonable minds could come but to one conclusion on the evidence submitted, and the conclusion is adverse to the non-moving party, then the court shall direct a verdict for the moving party on that issue. A motion for directed verdict tests whether the evidence is legally sufficient to submit to the jury. For this reason, the court does not weigh the evidence nor evaluate the credibility of witnesses. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 671 N.E.2d 252. Appellant raised a Motion for Directed Verdict at the close of appellee's evidence, as well as, at the close of all evidence. Although appellant raised several issues in these Motions, the only issue presented on appeal concerns appellee's claim of intentional infliction of emotional distress. A claim for intentional infliction of emotional distress requires a plaintiff to show that (1) the defendant intended to cause emotional distress, or knew or should have known that the actions taken would result in serious emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious. Hanley v. Riverside Methodist Hosp. (1991),78 Ohio App.3d 73, 82, 603 N.E.2d 1126. The Ohio Supreme Court has stated that "`it would be absurd for the law to seek to secure universal peace of mind, and many interferences with it must be left to other agencies of social control.'" Yeager v. Local Union 20, Teamsters Chauffeurs, Warehousemen Helpers of America, 6 Ohio St.3d 369, 374, 453 N.E.2d 666
(quoting Prosser, Law of Torts (4 Ed. 1971) 51, Section 12). "Conduct rises to the level of extreme and outrageous only if it goes beyond all bounds of decency and can be regarded as atrocious and intolerable in a civilized society. Generally, it must be conduct that would lead an average member of the community to exclaim, `Outrageous!'" Perkins v. Lavin (1994), 98 Ohio App.3d 378, 383, 648 N.E.2d 839, 842. "As a matter of law, the conduct must be more than mere `insults, indignities, threats, annoyances, petty aggressions, or other trivialities.'" Mason v. U.S. Fidelity and Guaranty Company, 69 Ohio App.3d 309, 317,590 N.E.2d 799 (quoting 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, comment d). In this case, appellant presented testimony describing the rape perpetrated on her by the appellant. Appellant is the best friend of appellee's fiancé and someone that appellee believed was her friend. Appellant testified to the trauma of the rape and her reactions to the rape. Schlaegel testified to appellee's emotional problems that arose after the rape as well as the stresses and problems that arose between the two of them because of the rape. Further, appellant presented, without objection by appellant, the testimony of a Licensed Independent Social Worker, with a Master's Degree in Social Work. This social worker testified that she had worked with appellee, following the rape, as appellee's mental health counselor. The social worker testified that appellee demonstrated the symptoms of post traumatic stress syndrome and that the syndrome is caused when a person suffers a traumatic incident. The testimony showed that a rape would constitute such a traumatic event. Upon reviewing the record, we find reasonable minds could come to differing conclusions on the evidence presented, and that the trial court correctly overruled the Motions for Directed Verdict on the issue of intentional infliction of emotional distress. Appellant's seventh assignment of error is overruled.
 VIII
In the eighth assignment of error, appellant contends that the trial court erred in not reducing the award of damages by the $1,569.93 that appellant paid to the victim to reimburse her for medical expenses and items taken from the victim's home pursuant to the criminal investigation of the rape. We find appellant's argument meritless. While it is not contested that appellant paid the victim, through Schlaegel, the $1,569.93 for expenses and losses incurred as a result of the rape, the Complaint did not set forth a claim for these expenses and losses nor did the jury make an award to the victim for these items. The jury awarded appellant damages for assault, battery and intentional infliction of emotional distress. These claims constituted personal injury claims and not property damage or loss claims. Since the jury did not award damages for these losses, the trial court did not error in reducing the award of damages by $1,569.93. Appellant's eighth assignment of error is overruled.
 IX
In the ninth and final assignment of error, appellant argues that the trial court erred when it permitted Dr. Stein to give an opinion on whether appellee was raped. Specifically, appellant argues that it was error to permit Dr. Stein to testify on the ultimate issue of fact on direct examination when the jury was capable of determining that issue without the aid of an expert witness. Appellant challenges the following testimony: Q. Doctor, you can't say conclusively — — you weren't there — you can't say conclusively whether Thelma Bartley was in fact raped, can you? A. That's correct. Q. But based upon your experience, treating these hundreds and hundreds of rape victims, would you say that her behavior, her physical injuries, her emotional state was at least consistent, within the realm of these hundreds and hundreds of other rape victims that you've treated? A. That's correct. TR 453-454 An expert may testify as an expert if "[t]he witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons." Rule 702(A) (in pertinent part). If the subject of the testimony is within the understanding of the jury, the expert testimony is inadmissible. State v. Koss (1990), 49 Ohio St.3d 213, 216, 551 N.E.2d 970 (citing Bostic v. Connor (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph three of the syllabus; and Lee v. Baldwin (1987), 35 Ohio App.3d 47, 519 N.E.2d 662). A jury is capable of making an analysis and factual determination as to whether a rape, perpetrated against an adult occurred without the benefit of expert testimony. See, in accord, State v. Roquemore (1993),85 Ohio App.3d 448, 454-455, 620 N.E.2d 110. The admissibility of expert opinion testimony is within the sound discretion of the trial court and "will provide a basis for reversal on appeal only upon an abuse of that discretion which amounts to prejudicial error." State v. Barton (1991),71 Ohio App.3d 455, 469. While we agree that it may have been error to permit Dr. Stein to draw a comparison between appellee's behavior, physical injuries and emotional state and those characteristics of other alleged rape victims Dr. Stein has treated, we do not find such error to be an abuse of discretion which amounts to prejudicial error. Dr. Stein acknowledged that he could not testify as to whether a rape actually occurred. Appellant and appellee both testified, describing the events of the evening. The jury was able to assess each person's credibility to determine if the sexual act between the parties was consensual or constituted rape. Further, we find appellant has made no showing of prejudice nor do we find prejudice upon review of the record. We find that the trial court did not abuse its discretion, so as to amount to prejudicial error, in permitting Dr. Stein to testify as to whether appellee's characteristics were consistent with those exhibited by other alleged rape victims the doctor had treated in the past. Appellant's ninth assignment of error is overruled.
The judgment of the Muskingum County Court of Common Pleas is affirmed.
 _____________________ Edwards, J.
Farmer, P.J. and Wise, J. concurs